

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor and Efficiency Expert
Austin, Texas

Dear Sir:

Opinion No. O-1062
Re: The type of records and
accounts that should be
kept by the State Treas-
urer in the payment of
State salary warrants
which have been assigned
by State employees

You have requested an opinion of this de-
partment concerning the type of records and accounts
that should be kept by the State Treasurer in the pay-
ment of warrants which have been issued to state em-
ployees but which warrants have been assigned by said
employees. In your letter of request you have asked
17 questions concerning the above stated general
proposition. Your questions will be answered sep-
arately and in the order in which they appear in your
letter.

"1. Article 4371 - State Treasurer:
'He shall keep true accounts of the re-
ceipts and expenditures of the public
moneys . . .'

"Is this provision mandatory upon
the State Treasurer?"

In your first question evidently you are re-
ferring to Article 4372, as amended by the 42nd Legis-



Honorable Ton C. King, page 2

lature in 1931. Said article reads as follows:

"The Treasurer shall keep true accounts
of the receipts and expenditures of the pub-
lic moneys of the Treasury, and close his
accounts annually on the 31st day of August,
with the proper legal vouchers for the same,
distinguishing between the receipts and dis-
bursements of each fiscal year."

You are advised that Article 4372 makes it
mandatory upon the State Treasurer to keep true ac-
counts of the receipts and expenditures of the public
treasury. Your attention is also called to the fact
that the Legislature has not left the matter of the
keeping of the accounts to the State Treasurer's dis-
cretion entirely, but has passed numerous articles
from time to time which define the type of records
and accounts to be kept by said State Treasurer.

In connection with your question number 1,
you have asked the following questions:

"2. Does the provision 'true accounts
of . . . expenditures of public moneys'
mean that the State Treasurer must keep
a record/or account disclosing only the
number and amount of State warrants paid
by him as State Treasurer?

"3. Or does 'true accounts of expen-
ditures of public moneys' mean that the State
Treasurer must keep a record/or account set-
ting out in detail the number and amount of
each state warrent received and paid by him
as State Treasurer?

"4. Does this statute mean that the
State Treasurer must also keep a record/or
account setting out the person, corporation,
bank, etc., who presented such warrant to
him as State Treasurer and who received pay-
ment thereon?

"5. Or does this statute mean that he
must also keep an account/or record showing

Honorable Tom C. King, page 3

that the state has discharged its obligation
to the payee of such warrant?"

In answer to the above quoted questions, you are
advised that Article 4382 of Vernon's Annotated Civil
Statutes, as amended by the 42nd Legislature in 1931,
controls the type of register to be kept by the State
Treasurer to show the issuance and payment of warrants.
Said article reads as follows:

"The Treasurer shall keep registers of
warrants issued, one for each class of warrants.
The Comptroller shall furnish lists of warrants
issued, which lists shall be compared with the
warrants and shall constitute the Treasurer's
registers of warrants issued. The amounts of
warrants issued shall be added by the Treasurer
and proved against the totals of the warrant reg-
isters. The date of payment of all warrants shall
be stamped on the above registers. The Treasurer
shall keep a 'warrants paid register.' In this
register the warrants shall be entered each day
when paid; the number and amount of each warrant
paid being entered. Warrants shall be grouped by
classes and separate totals of warrants paid from
each fund shall be shown, as well as the grand
total of all warrants paid each day. The Treas-
urer shall furnish to the Comptroller each day
a copy of the warrants paid register showing the
warrants paid. The Treasurer shall keep a reg-
ister of warrants cancelled, on which shall be
entered the details of all warrants cancelled."

It is to be noted that the "warrants paid register"
which the State Treasurer must keep, under the authority of
the above quoted article, must state the number and amount
of each warrant paid. That information concerning each war-
rant is to be entered on the day when the warrant is paid.
In other words, the Legislature has not left this matter up
to the discretion of the Treasurer with the broad duty on
said Treasurer to keep true accounts and expenditures of
public moneys, but has gone further and has stated specif-
ically what information shall be contained in the warrants
paid register. The Legislature has not provided herein
that the warrants paid register shall indicate to what
person or firm the warrant was actually paid. Under



Honorable Tom C. King, page 4

Article 4382 each warrant is to be set out separately
in the warrants paid register as to the number of said
warrant and amount. The Treasurer's register of war-
rants issued is furnished him by the Comptroller after
such warrants are issued. In this respect it is to be
pointed out that such warrant register, a copy of which
the Comptroller makes and furnishes to the Treasurer,
contains the information required by Article 4359 as fol-
lows:

"And such register shall consist of
an entry of the amount of the warrant,
name of the page, appropriation to which
charged, and such other information as may
be deemed advisable by the Comptroller."

A copy of this warrant register is kept by the
Treasurer, and it is only when the warrant is actually
paid that the same is to be entered into the warrants
paid register. In this manner the Treasurer is provided
with a record which shows when the warrant was paid, and
thereby when the state has discharged its obligation on
such warrant. The actual payment by the Treasurer of the
warrant is under the authority of Article 4371, which pro-
vides in part as follows:

"The Treasurer shall countersign and pay
all warrants drawn by the Comptroller on the
Treasury which are authorized by law . . ."

By way of summary, therefore, the Legislature
has not left the question of the type of warrant register
to be kept to the discretion of the State Treasurer under
the general provision that he keep true accounts of the
expenditures of public moneys, but the Legislature has gone
further and has specifically defined the type of register
to be kept by the State Treasurer and the information to
be contained in such register. It is the opinion of this
department that Article 4382 must be strictly complied
with by the State Treasurer in keeping the registers and
accounts.

"6. Certain banks, warrant companies,
and finance companies have followed the
practice of lending money to state employees

Honorable Tom C. King, page 5

which loans are secured by an assignment by the employee to the warrant company of all warrants due such employee by the state. The form used by John Doe Company reads as follows:

> "' Date _____ 193___ Rate __% $

| Date | Credit | Balance |
|------|--------|---------|
| "Received from John Doe | | |
| | | |
| | | |

> "Received from John Doe Company the above amount as an advanced payment to me for the purchase of a warrant or check due me by the State of Texas or Federal Government in the amount and for the period stated below. I hereby certify that I have not given an order or assigned said warrant or check to any other individual, firm or corporation. I hereby authorize delivery of said warrant or check to the above Company, and authorize said Company to endorse same for me when received. The discount on this item is to be on the full amount of warrant or check. For value received. This order is irrevocable until the above amount is fully paid, including 10% attorney's fees.

> ( ) Blue ( ) White

> $_____Salary  _____
> Signature

> _____193___  _____
> Department

> $_____Expense
> . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . ."

"This form is not sworn to before a notary public.

"(a) Is this assignment legal?

"(b) If so, is it binding upon the Comptroller of Public Accounts or a public official or employee

who distributes such warrants so that upon
the presentment to him of this assignment
he must deliver to the assignee all warrants
or any warrant in his possession in which the
assignor is named payee?"

The instrument which you enclose is one which
the state employee signs prior to the issuance to him of his
state pay warrant. The instrument therefore operates in
truth and in fact as a salary assignment, and must be con-
sidered as such. The validity of such instrument depends
upon the assignability of the salary of said employee,
which salary the warrant represents. It is to be pointed
out that the assignment calls for the purchase or transfer
of the warrant or check due the employee. This instrument
and the question you ask contemplate, therefore, that the
instrument is an assignment of a warrant or check due the
employee because of salary which has been earned. In this
connection it is to be pointed out that the unearned salary
of a public official cannot be assigned. 5 Corpus Juris
873 contains the following language:

"The reason for the rule is not a desire
to protect the private interest of such of-
ficers, but is one of public policy, based on
the necessity of securing the efficiency of
the public service by insuring that the funds
provided for its maintenance shall be received
by those who are to perform the work, at the
periods appointed for their payments.

"Applications of rule. The rule that
an officer cannot make a valid assignment
by anticipation of his salary or fees has
been applied to many different classes of
officers, including army officers, naval
officers, superintendent in department of
public charities, assistant parliamentary
counsel for the treasury in England, clerks
in the United States treasury department,
inspectors of customs, mail carriers,
lighthouse keepers, county assessors,
country treasurers, clerks of the peace,
clerks of court, masters in chancery, re-
ceivers, district or prosecuting attorneys,
sheriffs, policemen, and municipal firemen."



Honorable Tom C. King, page 7

The Supreme Court of Texas in the case of State National Bank of El Paso vs. Fink, 24 S. W. 256, held that the above quoted rule applies in Texas, and stated as follows:

(at pages 257-258)

". . . .The law provides compensation for official service in order to enable the officer to be free from the cares of making provision for his own support and that of his family during the term of office, that he may devote his whole time to the discharge of the duties of his office. If such officer is permitted to assign his salary or fees before earned, he may thus deprive himself and family of this support, and to secure it he must look to some other source, thereby depriving the state of the careful and thoughtful attention that the public interest demands. A hungry man is weak in the presence of temptation, no matter what may be his ability to withstand it in a state of iddependence. To deprive such an officer of the means of daily support for himself and family, while his time must be given to work in which he can expect no relief, would be a strong inducement to resort to methods which, if not dishonest, would at least be inconsistent with the public good, and the dignity of his office be destroyed by losing the respect and confidence of the public . . . ."

See also the case of Williams vs. Ford, 27 S. W. 723.

As to just which employees are considered public officials under the holding of the Supreme Court of Texas in the Fink case, supra, is undecided in Texas. We can, however, see the extent to which the rule has been extended in the quotation from Corpus Juris, supra. The Court of Appeals of Kentucky, in the case of Schmitt vs. Dooling, 140 S. W. 197,

Honorable Tom C. King, page 8

held the rule to apply to a fireman. In so holding
the court defined the term "public officer" as it is
used in this connection, as follows:

(at page 198)

"The words 'public officer,' as used
in these opinions, mean one who renders a
public service; a service in which the gen-
eral public is interested. For if it were
not so the reason for the rule would be
wanting, inasmuch as all the opinions ex-
pressly declare that the rule is not
adopted for the benefit of the one render-
ing the service. Is a fireman a public
officer within this meaning?"

The Supreme Court of Missouri extended the
rule to an assignment made by a post office mail car-
rier. See State vs. Williamson, 23 S. W. 1054.

The rule announced above, however, does
not apply to salaries or wages or fees of public of-
ficers which have been earned, although the same are
uncollected. The Court of Civil Appeals of Texas, in
the case of Sanger vs. City of Waco, 40 S. W. 549, writ
of error refused by the Supreme Court, so held. The
court stated as follows:

(at page 550)

". . . . We do not hold that an of-
ficer cannot assign his earned fees or
salary, because the right to do so would
not produce the same results that would
follow the enforced application of such
compensation to the payment of his debts.
If the money were in the treasury to
pay the officer for the services rendered,
there would be no inducement to sell his
claim for less than its face value; and,
if the money were not on hand to pay for
the services rendered, it might be nec-
essary for the officer to discount his
claim, in order to get the means to sup-
port himself and family . . . ."



Honorable Tom C. King, page 9

The same principle was announced by the Court of Civil Appeals of Texas in the case of Thompson vs. Cullers, et al, 35 S. W. 412. The court stated as follows:

"It is clearly implied from these authorities and the others cited in appellant's brief that when the official services are performed, and the salary or fees earned and due, public policy does not prohibit their assignment . . ."

The Galveston Court of Civil Appeals in the case of Bates vs. First State Bank in Caldwell, 105 S. W. (2d) 784, writ of error dismissed, held that a public officer's fees were assignable after the same had been earned, regardless of the fact that they had not been collected from the State Comptroller, and a state warrant for the same had not been issued. The holding in that case concerned fees of a tax collector which had been assigned after they had been earned, but prior to the issuance of a state warrant by the Comptroller in payment of the same.

You are advised, therefore, that the unearned salary of a public official is unassignable, but that the portion of his wages or salary which has been earned may be assigned prior to the time a warrant in payment of the same is issued. In this connection your attention is again called to the fact that the purported instrument considered in this opinion recites that the warrant or check is due the employee.

Your attention is further called to the fact that where wages or salary were properly assignable because the same had been earned, but a warrant for the same had not as yet been issued, Article 6165a, Section 6, Vernon's Annotated Civil Statutes, would apply. Said article reads as follows:

"Such bond when so approved by the County Judge shall be filed, together with the said affidavit, in the County Clerk's office in the County in which said loan broker is located and doing business, and the said bond shall be recorded at length by the County Clerk in a well bound

Honorable Tom C. King, page 10

book kept for that purpose. That each as-
signment of wages or contract providing
for the purchase of wages, mortgages, Power
of Attorney to collect or other transfer of
the salary or wages of a married man and
each bill of sale or chattel mortgage upon
household or kitchen furniture of a married
man shall be void unless the same be made
and given with the consent of the wife, and
such consent shall be evidenced by the wife
joining in the assignment, mortgage, Power
of Attorney to collect, or other transfer
of salary or wages and the signing of her
name thereto and by her separate acknowledg-
ment thereon, taken and certified to by a
proper officer, substantially in the mode
provided for the acknowledgment of a wife
in the conveyance of a homestead."

The above quoted article would apply where
wages or salary were being assigned prior to the issuance
of the warrant in payment of the same. Of necessity it
would not apply where the warrant was issued for the
same, because then the same would not operate as a wage
assignment, but would operate as the transfer of a non-
negotiable instrument or as the cashing-in of the em-
ployee's pay check.

In order that we may be able to ascertain the
validity of an assignment of a state warrant, it is nec-
essary to see exactly what type of an instrument such a
warrant is. The best expression as to the character
of a state warrant was made by Judge Morrow of the Court
of Criminal Appeals of Texas in the case of Speer v.
State, 58 S. W. (2d) 95. The court stated as follows:

"The warrant issued by the state for
$2,626.95 was not a negotiable instrument
in the sense that it would have entitled
an innocent purchaser of the warrant to
acquire from the state the amount stated
on the face of the warrant, but such pur-
chaser would acquire no more than a right
to collect from the State the amount that
it owed the appellant, namely, $1,626.95.
No authority for the issuance of the war-



Honorable Tom C. King, page 11

rant for the amount stated in its face
or to pay the full amount of such warrant
existed. No purchaser of the warrant,
whether in good faith or not, could
legally demand from the state the payment
of more than the amount which was owing.
See Ency. of Law Proc., vol. 11, p. 531;
volume 7, p. 818; volume 36, p. 895;
Corpus Juris, Vol. 59, p. 269 & 406;
Tex. Jur. vol. 11, p. 665, § 118.

"Speaking of the negotiability of a
warrant, in the section of Corpus Juris
mentioned above, it is said: 'It is not,
however, a negotiable instrument in the
sense of the law merchant so as to shut
out as against a bona fide purchaser in-
quiries as to its validity or preclude
defenses or set-offs which could be
asserted as against the original payee.
* * * As against the state the assignee
acquires no greater rights than the party
to whom the warrant was originally issued.'

"From the Section of Texas Jurispru-
dence mentioned, the following is quoted:
'While warrants are in the ordinary form
of commercial paper, they do not possess
the qualities of such paper; they are not
negotiable instruments.' . . ."

There can be no question but that state war-
rants are not negotiable instruments as the same were
known under the law of merchants. Your attention is next
called to Article 569 of the Revised Civil Statutes of
Texas, which reads as follows:

"The obligee or assignee of any
written instrument not negotiable by
the law of merchants, may by assign-
ment transfer all his interest there-
in to another."

We are unable to find any reason why Article
569 would not apply to state warrants. Under the author-



ity of the above quoted article, it has been held that credit memorandum may be assigned. See Red Motor Co. v. Goad Motor Co., 24 S. W. (2d) 67.

It was also held that time checks issued by an employer are assignable by an employee. See Aldridge Lumber Company vs. Graves, 131 S. W. 846, writ of error dismissed by the Supreme Court.

This department ruled in an opinion dated July 1, 1937, addressed to the Honorable George H. Sheppard, Comptroller of Public Accounts, which opinion was written by the Honorable Scott Gaines, First Assistant Attorney General, that while State warrants are not negotiable instruments, the same may be assigned. Said opinion reads in part as follows:

> "It is the well settled law of this State that State or county warrants are not negotiable instruments but are non-negotiable instruments within the law merchant but the title to such warrant may be transferred by endorsement and delivery, but an assignee would acquire no greater rights than the party to whom the warrant was originally issued. In other words, an ordinary State warrant drawn against the State General Revenue Fund in the hands of an assignee would be subject to the same defenses and offsets which could be asserted against the original payee. Speer v. State, 58 S. W. (2d) 95, 123 Tex. Cr. Rep. 188; City of Belton v. Harris Trust and Savings Bank, 273 S. W. 914, affirmed 283 S. W. 164; Lasater v. Lopez, 110 Tex. 186, 217 S. W. 393; Galloway vs. Sheppard, 89 S. W. (2d) 417 (writ of error dismissed).

> "Therefore, answering your first question, you are respectfully advised that a warrant drawn against the State General Revenue Fund is not a negotiable instrument in the sense that the law merchant would shut out as against a bona fide purchaser inquiries as to its validity or preclude defenses or set-offs

Honorable Tom C. King, page 13

which could be asserted against the or-
iginal payee. As against the state the
assignee acquires no greater rights than
the party to whom the warrant was or-
iginally issued. In other words state
warrants are not negotiable instruments
further than that title may be trans-
ferred by endorsement and delivery."

You comment in your letter on the fact that
the form for the warrant assignment is not sworn to
before a notary public. You are advised that it is
unnecessary that a written assignment be sworn to and
acknowledged. See 6 Corpus Juris Secundum 1099.

You are next concerned with whether or not
such warrant assignment is binding upon the state
agent who delivers the warrant to the payee. As a
general rule, valid assignments are binding upon
the debtor or payer, when he is given notice of the
assignment. This rule has been applied by the courts
of this state to a situation where a non-negotiable
instrument is transferred under Article 569, supra,
and it has been held that under such article, if
notice is given to the debtor, he is bound thereby
and has to deliver said warrant to the assignee.
This conclusion logically follows from the statement
of the court in the case of Gulf C. & S. F. Ry. Co.
v. Eldredge, 80 S. W. 556, as follows:

"Article 309 of the Revised Statutes
of 1895 provides that the assignee of any
instrument mentioned in the preceding article
may maintain an action thereon in his own
name, but he shall allow every discount and
defense against the same which it would
have been subject to in the hands of any
previous owner before notice of the assign-
ment was given to the defendant. The pre-
vious article referred to is article 308,
which authorizes a pledgee or assignee of
any instrument not negotiable by the law
merchant to transfer by assignment his inter-
est to another. It is true that these pro-
visions of the statute use the expression
'written instrument', but we are inclined

to the opinion that it can be looked to
in order to determine upon whom the bur-
den rests to establish the fact that pay-
ment was made with notice or without
notice of the assignment. The statute
provides that the assignment is made
subject to all of the defenses before
notice of the assignment was given to the
defendant. The use of the expression 'notice
of assignment was given to the defendant'
implies that the defendant must be given
notice of the assignment in order to pre-
clude him from asserting a settlement made
with the original creditor. The rule may
possibly be otherwise with reference to
negotiable instruments. A debtor who
settles with the original creditor a non-
negotiable claim, without notice that it
has been transferred, ought to be pro-
tected; and we are inclined to the
opinion that the burden of proof rests'
upon the assignee to establish some fact
indicating that the debtor had notice at
the time the settlement was made with
the original creditor. . . ."

The same conclusion may also be drawn from
the language of the Supreme Court of Texas in the case
of Stamford Compress Company vs. Farmers & Merchants
National Bank, 143 S. W. 1142, as follows:

"The receipt was not assignable at
common law; and the purpose of the Legis-
lature in enacting the article copied
was to make such instrument assignable,
so that the person to whom such instru-
ments should be payable might assign
the contract, thus placing the assignee
in the place of the assignor. But the
assignee of such contract could not have
sued the maker thereof at common law,
but must have used the name of the original
obligee. To enforce the right acquired
under article 308, the Legislature enacted



Honorable Tom C. King, page 15

article 309, Revised States, which reads: 'The assignee of any instrument mentioned in the preceding article may maintain an action thereon in his own name, but he shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant; and in order to hold the assignor as surety for the payment of the instrument, the assignee shall use due diligence to collect the same.'

". . .

"Article 309 made it the duty of the bank, when it received the receipt, to give notice to the Compress Company of the transfer in order to hold the obligor responsible to the assignee.

". . .

"In Swearingen v. Buckley it was said: 'It was the duty of the assignee of a non-negotiable note to promptly notify the maker of such transfer. It is even held that a transfer, save as between the payee and the indorsee, is not complete until such notice was given . . .'

". . .

"By a strong implication article 309, supra, authorizes the obligor in a non-negotiable contract to recognize the obligee as the owner of the property until notified of its assignment."

It is therefore the opinion of this department that under the holdings of the above quoted cases and Article 569, if notice of an assignment or transfer is brought to the attention of the state agent whose duty it is to deliver the warrant, then said state agent is bound thereby and must pay the warrant to the assignee.

In this respect you are advised, however, that when notice of an assignment is presented to the paying agent, whihh ssignment shows on its face to be an assignment of unearned salry or wages of a public official, the paying agent must consider uch assignment as void, and may not pay the same to the assignee. s pointed out by the Court of Civil Appeals of Texas in the case f Willis v. Weatherford Compress Co., 66 S. W. 472, payment to an asignee under a void assignment is no payment, and the fees are till uncollected fees of office so far as the employee is concerned. owever, where the instrument recites that the warrant or check is ue the employee and there is nothing indicating the same as being or unearned salary, the assignment would have to be recognized ithin the limitation of Article 6165a-6, supra.



Honorable Tom C. King, page 16

"7. Must a warrant received by a warrant company under such an assignment be endorsed by the payee or by some one legally authorized to endorse the same for him before the State Treasurer is authorized to pay the same to the holder thereof?

"8. If so, is the form hereinabove set out sufficient so as to authorize The John Doe Company to endorse a warrant received by them by virtue of an assignment with that form?

"9. If this form authorizes this company to endorse such warrants for the payees thereof, which of the following steps should be taken by The John Doe Company before the State Treasurer is authorized to pay warrants presented to him as State Treasurer by The John Doe Company if the name of the payee of such warrants has been endorsed upon the same by The John Doe Company:

"(a) Merely present such warrants for payment?

"(b) File periodically a sworn statement that they (The John Doe Company) have written authorization for all warrants presented within that period to endorse the payee's name thereto?

"(c) Accompany each warrant presented for payment with a sworn statement that The John Doe Company is authorized to endorse the payee's name thereto?

"(d) Accompany each warrant presented for payment with the original/or a carbon copy of the form heretofore set out signed by the payee of such warrant?"

In these three questions you are concerned with the type of information the State Treasurer should require before he pays a state warrant to anyone but the payee therein. There can be no question but that when

an assignee merely presents the warrant to the State
Treasurer without any other evidence that the same has
been properly assigned to him, the State Treasurer
would be unauthorized to make payment on the warrant
to the assignee. This was the holding of the Court
in the case of Attoyac River Lumber Co. v. Payne, 122
S. W. 278. In discussing non-negotiable instruments
the court stated as follows:

> ". . . The checks in question having none
> of the essential qualities of a negotiable
> instrument payable to bearer, the mere pos-
> session of them by the appellee raises no pre-
> sumption that she is entitled to the rights
> of the person to whom they were issued. The
> evidence failed to show that appellee had ac-
> quired the right and title of the original
> owner of said checks, and therefore fails to
> show that she was entitled to recover thereon.
> . . ." (Underscoring ours)

The Supreme Court of Texas in the case of Gregg
v. Johnson, 37 Tex. 558, in speaking of a non-negotiable
instrument, said as follows:

> ". . . A mere transfer by delivery will
> not enable the holder to recover, without
> averment and proof of such bona fide owner-
> ship. . . ."

However, if the warrant is endorsed by the payee
and delivered to the warrant company, such endorsement
and delivery would be sufficient to transfer said warrant.
Your attention is called to the fact that State warrants
read "pay to the order of _____ ." Honorable Scott
Gaines in the opinion previously quoted from, stated as
follows:

> ". . . but the title to such warrant may
> be transferred by endorsement and delivery,
> . . .
>
> "In other words state warrants are not
> negotiable instruments further than that title
> may be transferred by endorsement and delivery."

In the case of City of Belton v. Harris Trust and
Savings Bank, 273 S. W. 914, the court stated as follows:



Honorable Tom C. King, Page 18

"That municipal warrants are not negotiable instruments within the law merchant, <u>further than that title may be transferred by indorsement and delivery, is well settled.</u>"

The Waco Court of Civil Appeals in the case of Wood v. Sparks, 42 S. W. (2d) 142, stated as follows:

"However, the mere fact that the instrument was nonnegotiable in the sense that a purchaser of negotiable paper who buys for a valuable consideration without notice, takes the same free of equities in favor of the maker, does not mitigate against as assignment of the obligation evidenced thereby by indorsement and delivery of the instrument. Whether it be denominated a note or not, it was the primary obligation to pay and was the evidence of the debt. The fact that it was made payable to W. P. Sparks or order, evidences the intention of the parties that title thereto should pass by indorsement and delivery of the instrument, and such was the effect thereof. . . ."

It is the opinion of this department, therefore, that while a State warrant is not a negotiable instrument, the same may be transferred by endorsement and delivery.

In answer to your question number 8, we are unable to see any reason why the form which you include in your letter would not be sufficient to authorize the John Doe Company to endorse a warrant received by them by virtue of an assignment.

In your question number 9 you are concerned with the authority of the Treasurer to recognize an endorsement made by a warrant company in the name of the payee under the authority of the previously discussed power of attorney. There can be no question but that when the Treasurer pays a warrant endorsed in this manner he does so at his peril. As pointed out by the court in the case of Willis v. Weatherford Compress Co., 66 S. W. 472, payment to an assignee under a void assignment is no payment at all. Therefore, the Treasurer should require such information concerning the authority to endorse payee's name on a warrant as he feels will protect himself. There can be no question but that the method you suggest in number 9 (d) - that of accompanying each warrant with the original or a copy of the authorization - would be the method that would



Honorable Tom C. King, page 19

best protect the Treasurer. However, any of the methods you suggest would be sufficient if in fact authority for the endorsement had been given by the payee. The problem which this question presents is one of proof in case of a contest arising over a particular warrant and not a problem of authority of the Treasurer.

"10. If the form heretofore set out is not sufficient to authorize the John Doe Company to endorse upon a state warrant the name of the payee, what steps would have to be taken by that company before the State Treasurer would be authorized to pay the same to The John Doe Company? Would The John Doe Company have to file with each state warrant upon presentment for payment, a power of attorney to endorse the name of the payee upon the same?"

This department is unable to find any reason why the enclosed authorization would not be sufficient to authorize the John Doe Company to endorse the state warrant in the name of the payee. The endorsement is part of the written assignment plan and as has been previously stated, such assignment does not have to be acknowledged or be under oath.

"11. If your answer to question number five is in the negative, is there any statutory or constitutional prohibition which would prevent the State Treasurer from requiring a power of attorney to be filed and by so doing keep an account/or record showing that the state has discharged its obligation to the payee of such state warrant?

"12. Or is there any statutory or Constitutional provision requiring the State Treasurer to keep accounts/or records showing that the state has discharged its obligation to the payee on a state warrant?"

As previously pointed out in this opinion, Article 4382 requires that the State Treasurer register each warrant when the same is paid in a "warrant paid register" and said register is to show the number and amount of said warrant. This is the record that the Legislature has provided for and which shows that the state has discharged its obligation on a particular warrant. However, there is nothing in Article 4382 or in any other statute or in

the Constitution which would prohibit the State Treasurer from keeping a record showing to whom a particular warrant was paid, although, as previously pointed out, the same is not required under Article 4382. In line with what has been previously stated, the State Treasurer would have to recognize an assignment of a state pay warrant regardless of the fact that the assignee did not furnish the State Treasurer with the power of attorney signed by the payee. There can be no question but that under the decisions in this state, and under Article 569, such a written assignment as is enclosed in your letter would be sufficient to assign validly a payee's interest in a state pay warrant, and such assignment would have to be recognized by the State Treasurer when the same is presented to him with proper and sufficient evidence of the transfer.

> "13. If no statute or constitutional provision prescribes the manner whereby a governmental function is to be performed and no statute or constitutional provision prohibits the use of the most efficient and business like manner, shouldn't that method of performing such function be used so as to best protect the interest of the state?"

Undoubtedly your question number 13 must be answered in the affirmative. However, as to just what is the most efficient and business-like manner of performing a particular function is a question which in this case would rest within the discretion of the State Treasurer so long as he acts within the rules and limitations set down by the Legislature in the articles discussed previously in this opinion.

> "14. Would the State Treasurer and the sureties upon his official bond be liable to the state if payment was made of warrants presented for payment where a sworn statement was filed by the presenting person or corporation that the presenting person had been authorized to endorse thereon the name of the payee, if in fact no such authorization existed?"



"15. Would the person so presenting the warrant for payment under such a sworn statement be legally liable to the state?"

The answer to your questions as to the liability of the State Treasurer and the person presenting the warrant might depend in each instance on the facts of the particular case, and we prefer not to attempt to lay down a general rule of law based on a hypothetical question under these circumstances.

"16. If your answer to question Five is in the negative, and your answers to question Fourteen and Fifteen are in the affirmative, does the fact that a public official and his sureties will be legally liable to the state for such public official's non-feasance or misfeasance in the performance of a governmental function or that some bank or corporation or person will be legally liable to the state for breach of a warranty or for misrepresentations, justify inefficient and unbusiness-like performance of a governmental function when an efficient and business-like manner of performing such governmental function is not prohibited by statute or constitution?"

Even if the State Treasurer or some banking concern were personally liable in a particular case, this would by no means justify the State Treasurer's not complying with the law as to the type of warrant registers he is to keep. There can be no question but that the State Treasurer should adhere strictly to the rules of the keeping of warrant registers as set out by the Legislature, and also should adopt such rules as he thinks necessary to satisfy himself that a valid assignment or transfer of an employee's pay warrant has been made before he makes payment on such a warrant to one not the payee therein.

"17. If the State Treasurer should keep no record showing that the state has fulfilled its obligation to the payee of a warrant and does not require persons presenting warrants which have not been endorsed by the payee under an assignment to present separate and actual authorization to endorse the same in the name of



Honorable Tom C. King, page 22

the payee, isn't the State Treasurer in effect making such person a paying agent for the state? If so, can he legally do this?"

Under the situation you assume in question number 17, the State Treasurer is not making such a person as you describe a paying agent for the state, because such payment by the State Treasurer is for the purpose of discharging the state's liability on the warrant. The payment by the State Treasurer is to the individual as assignee or transferee of the payee, and not to him as an agent to make payment to the payee on the warrant. The payment by the State Treasurer is for the purpose of discharging the state's liability under the warrant in all cases, and it could not be said then that the State Treasurer was making a paying agent out of the person to whom he pays the warrant.

We trust that the above discussion of the questions propounded in your letter will satisfactorily answer your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Billy Goldberg
Assistant

BG:LM

APPROVED FEB 24, 1940

ATTORNEY GENERAL OF TEXAS